UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANTAE YOUNG,<br><br>Plaintiff,<br><br>v.<br><br>NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>Defendant. | Case No. 17-cv-04390-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Docket No. 18 |

On June 23, 2017, Plaintiff filed a putative class action in San Mateo County Superior Court, against her employer, for various California wage-and-hour law violations. *See* Docket No. 1, Exh. A ("Comp."). NPC removed the case, invoking jurisdiction under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. §1332(d). *See* Docket No. 1. Plaintiff subsequently filed the motion to remand. *See* Docket No. 18. Because the Court finds the amount in controversy does not exceed $5 million, the Court concludes that the CAFA requirements are not met and thus **REMANDS** the case to San Mateo Superior Court.

## I. BACKGROUND

Plaintiff Chantae Young filed this putative class action in San Mateo County Superior Court against Defendant Novartis Pharmaceuticals Corporation ("NPC") on behalf of herself and a putative class of similarly situated employees. Plaintiff alleged several violations under California Labor Code and California Business and Professions Code. *See* Docket No. 1, Exh. A. NPC then removed the case to this court. *See* Docket No. 1.

NPC calculates the amount in controversy for purposes of removal to be more than $8 million. *See* Docket No. 1 ¶ 35. NPC has submitted evidence that the size of the class is approximately 192 non-exempt employees. Hughes Decl. ¶ 8. 84 out the 192 non-exempt

employees left NPC between June 23, 2014 and July 3, 2017. *Id*. There were approximately 59 non-exempt employees who worked at least one day for NPC in California between June 23, 2016 and July 25, 2017. *Id*. ¶ 10. The 192 employees were employed a total of approximately 17,196 workweeks from June 23, 2013 through July 25, 2017. *Id*. ¶ 9. The average hourly rate for the 192 employees during the period was approximately $28.85 and the average hourly rate for the 84 employees at the time of separation was approximately $29.56. *Id*. ¶¶ 8-9. For purpose of projecting the amount in controversy, NPC assumes that each putative class member has one hour of unpaid overtime per week, *see* Docket No. 1 ¶ 23, and has one missed meal break and one missed rest break per day (100% violation rate), *see* Docket No. 1 ¶ 25. NPC also assumes that each putative class member is entitled to the maximum 30 days of waiting time penalties, *see* Docket No. 1 ¶ 27, and each wage statement generated in the one-year statute of limitation for each putative class member is inaccurate, *see* Docket No. 1 ¶ 34. NPC projects the attorneys' fees to be 25% of the estimated recovery and includes the attorneys' fees in the amount in controversy. *See* Docket No. 1 ¶ 35. Plaintiff objects to each assumption. *See* Docket No. 18.

Based on the assumptions, NPC estimates the amount in controversy as follows:

**Unpaid Overtime Wages**: 1 (hour of overtime) x $28.85 (average hourly rate) x 1.5 (overtime rate) x 17,196 (number of workweeks for all putative class members) = $744,242.88.[1]

**Missed Meal/Rest Break Premiums**: $28.85 (hourly rate) x 10 (combined meal and rest break violations per week) x 17,196 (total workweeks) = $4,961,046.00 (amount in controversy).

**Waiting Time Penalties**: [$29.56 (average hourly rate at time of departure) x 8 (hours worked each day)](average daily rate) x 30 (days) x 84 (number of employees who left between June 23, 2014 and July 3, 2017) = $595,929.60 (amount in controversy).

**Wage Statement Penalties**: [$50 x 59 (number of class members since June 23, 2016)] + [(1,481 (aggregate pay periods since June 23, 2016) - 59 (number of class members since June 23, 2016)) x $100] = $145,150.00 (amount in controversy).

**Attorneys' Fees**: 0.25 x $6,446,368.48 (sum of amounts in controversy) = $1,611,592.12.

---

[1] This math is wrong. The correct number should be $744,156.90.

2

Based on these calculations, NPC estimates the total amount in controversy is $8,057,960.60. *See* Docket No. 1 ¶ 35.

## II. DISCUSSION

### A. Legal Standard

A district court has jurisdiction over a class action if: (1) the case involves at least 100 putative class members; (2) at least one class member is a citizen of a state different from any defendant; and (3) the aggregated amount in controversy exceeds $5 million (exclusive of interest and costs). 28 U.S.C. § 1332(d)(2), (5), and (6); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007). Generally, removal jurisdiction is statutory and strictly construed. *Gould v. Mutual Life Ins. Co. of N.Y.*, 790 F.2d 769, 773 (9th Cir. 1986); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, there is no anti-removal presumption in cases involving CAFA and thus the CAFA jurisdictional statute is not to be strictly construed. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (holding that it is congressional intent to interpret CAFA jurisdiction expansively).

### B. Size of Class

NPC presented uncontested evidence that the class consists of more than 100 individuals. Hughes Decl. ¶ 8. Thus, this jurisdictional requirement is met.

### C. Minimal Diversity

NPC is incorporated in Delaware and maintains its U.S. headquarters in New Jersey. Docket No. 1 ¶ 10; Hughes Decl. ¶¶ 4-5. Plaintiff is a citizen of California. Comp. ¶ 5. Thus, the minimal diversity requirement is met.

### D. Amount in Controversy

The removing defendant of establishing bears the burden to establish jurisdiction under CAFA. *Gaus*, 980 F.2d at 566. Thus, the defendant bears the burden of showing that the amount in controversy exceeds $5 million and of persuading the court that the estimate is a reasonable one. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). The defendant may establish the amount in controversy by an unchallenged, plausible assertion of the amount in

3

controversy in its notice of removal. *Dart*, 135 S. Ct. at 553. However, if the plaintiff contests defendant's estimate, then "both sides submit proof and the court decides, by a preponderance of evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 554. Parties may submit evidence outside the complaint, including affidavits or declarations, or any kind of "summary-judgment-type evidence." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). In considering the evidence, the court does not draw inferences in favor of any party. *Dart*, 135 S. Ct. at 554. The Court has given both parties ample opportunities to submit evidence including and after the hearing on the motion. The Court, in considering the evidence, must determine whether the $5 million jurisdictional threshold has been established by a preponderance of the evidence. NPC has failed to meet its burden of proving the requisite amount in controversy for the following reasons.

Even assuming that all the assumptions made for unpaid overtime wages, waiting time penalties, and wage statement penalties are reasonable, the amount in controversy for these three counts is only $1,485,322.48. Therefore, the key issue is the amount of controversy attributed to the meal and rest break premiums, which makes up almost $5 million.

1. Meal and Rest Break Premiums

In calculating the meal and rest break premiums, NPC assumes a 100% violation rate. Docket No. 1 ¶ 25. NPC argues that this assumption is reasonable because the allegations in the Complaint states that class members were denied meal and rest breaks "at all material times," *see* Comp. ¶ 25, based on a "uniform policy/practice of wage abuse . . . [that] involved failing to pay them for . . . missed meal periods and rest breaks," *see* Comp. ¶ 40, and policies and practices "requiring employees . . . to work through their meal and rest periods without paying them proper compensation." Comp. ¶¶ 69, 78, 120.

The allegations in the Complaint do not support a 100% violation rate assumption. The Ninth Circuit made clear in *Ibarra* that "'a pattern and practice' of doing something does not necessarily mean always doing something" and that even "an institutionalized unwritten policy that mandates the employment violations . . . including the denial of meal and rest periods, does not mean that such violations occurred in each and every shift." *Ibarra,* 775 F.3d at 1198-99.

4

Therefore, Plaintiff's allegations that NPC engaged in a uniform policy and practice of meal/rest break violations cannot support the assumption that the violations happened 100% of the time. Moreover, Plaintiff claims a uniform policy of "*failing to pay* them for all . . . missed meal periods and rest breaks" and "policies and practices of requiring employees . . . to work through their meal and rest periods *without paying them proper compensation*." Comp. ¶¶ 25, 120. Even if one could infer from such allegations that each time a meal break or rest break is missed, NPC fails to pay for the meal/rest break premium, the allegations do not tell us how often an employee misses a meal break or rest break. Thus, the allegations do not support the assumption that each employee misses one meal break and one rest break per day. It only implies that *when* such breaks are missed, employees are not paid the premium.

NPC attempts to distinguish *Ibarra* by arguing that plaintiff in *Ibarra* alleged that the violations occurred "on multiple occasions," whereas this kind of limiting language does not appear in Plaintiff's Complaint. Docket No. 28 at 9. This argument is without merit. In *Ibarra*, the phrase "on multiple occasions" only appeared in the context of unpaid overtime. While the Ninth Circuit denied the 100% violation rate assumption in calculating unpaid overtime compensation, *Ibarra*, 775 F.3d at 1199, it also refused to find a 100% violation rate for unused breaks even though the "on multiple occasions" phrase did not appear in the discussion of missed meal and rest breaks. *Id.*

NPC relies on Plaintiff's allegation that the violations occurred "at all material times," Comp. ¶ 40, to support the assumption of a 100% violation rate. *See* Docket No. 1 ¶ 24. But "at all material times" provides a time period within which violations occurred; it does not say how after within that time period violations occur. The Ninth Circuit, albeit in an unpublished decision, specifically noted that the phrase "at all relevant times" in the complaint does not permit a removing defendant to assume a 100% violation rate because the phrase does not refer to a violation rate. *See Branch v. PM Realty Group*, 647 Fed. Appx. 743, 746 n.7 (9th Cir. 2016).

NPC also relies on *Altamirano* in which this Court previously allowed a 100% violation rate assumption in calculating the amount in controversy for missed meal breaks. *See Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *11 (N.D. Cal. June 14, 2013).

5

However, *Altamirano* was decided before *Dart* and *Ibarra*. In light of *Dart* and *Ibarra*, the Court finds there is no sufficient basis to assume a 100% violation rate in this case.

NPC would have submitted evidence to support the 100% assumption. Although it submitted Lucy Hughes' declarations, the declarations only state the numbers of employees, total workweeks, average hourly rates and their full-time employment status. *See* Docket No. 1-1 (Hughes Decl.); *see also* Docket No. 28-8 (Hughes Supp. Decl.); *see also* Docket No. 36 (Hughes Second Supp. Decl.). The declarations say nothing about the frequency of missed meal and rest breaks either. *Id*.

NPC has not met its burden to prove that the 100% violation rate assumption is reasonable and that the amount in controversy exceeds $5 million. Even if the Court were to assume a violation rate, *e.g.*, of two days a week (*cf. Branch*, 647 Fed. Appx. at 746), the damages for missed meal and rest breaks would amount to $1,984,418.40. Adding the claims for unpaid overtime wages ($744,242.88), waiting time penalties ($595,929.60), wage statement penalties ($145,150.00), total damages equals $3,469,740.88. Even if a 25% fee award is added, the total amount in controversy would still be only $4,337,176.10. However, as noted below, even a 25% fee award cannot be counted.

2. Attorneys' Fees

NPC seeks to include attorneys' fees in the amount in controversy and calculates the attorneys' fees to be 25% of recovery for unpaid overtime, meal and rest break premium, waiting time penalties, and wage statement penalties. Docket No. 1 ¶ 35. Although the Ninth Circuit has established 25% of the common fund as a benchmark award for attorneys' fees, *see Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003), that figure is only used to determine reasonableness of a fee awarded under a common fund analysis. In the common fund content, such fees do not add to a defendant's potential liability and are not to be counted toward the amount in controversy. *See Scott v. Credico (USA) LLC,* No. 17-cv-02846-EMC2017 WL 4210994, at *3 (N.D. Cal. Sep. 22, 2017); *see also* Fed. Prac. & Proc. § 3704.2 (discussing "cases concluding that attorneys' fees paid from a common fund recovery cannot be considered for amount in controversy purposes because they are not damage elements, do not enhance any

6

plaintiff's claim against any defendant, and actually are deducted from the common fund.").

Attorneys' fees may be counted toward the amount in controversy only if "an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language." *Galt G/S v. JSS* Scandinavia, 142 F.3d. 1150, 1155-56 (9th Cir. 1998). In this case, the only fee-shifting statute is for the wage-statement-penalty claim.[2] *See* Cal. Labor Code § 226. Attorneys' fees for the wage-statement-penalty claim must be calculated based on the number of hours worked at a reasonable hourly rate – the lodestar method. *See Winterrowed v. Am. Gen. Annuity*, Ins. Co., 556 F.3d 815, 826-27 (9th Cir. 2009). NPC has failed to present any evidence to support an estimate of attorneys' fees that Plaintiff might recover based on a projected lodestar. Nor has NPC provided any basis for the Court to conclude that a 25% benchmark provides a reasonable proxy for the lodestar estimate. Therefore, NPC has not proven by a preponderance of evidence attorneys' fees that should be included in the amount in controversy. In any event, even if a 25% award were included, the total amount of controversy would not read $5 million.

### III. CONCLUSION

Because the preponderance of the evidence does not establish the amount in controversy exceeds $5 million, the Court lacks jurisdiction under CAFA. The Court therefore **REMANDS** the matter to the San Mateo County Superior Court.

This order disposes of Docket No. 18.

**IT IS SO ORDERED**.

Dated: October 16, 2017

_____
EDWARD M. CHEN
United States District Judge

---

[2] Plaintiff alleges Cal. Labor Code §§ 1194 and 2802 violations in the Complaint and these sections also authorize an award of attorneys' fees. *See* Comp ¶¶ 82-87, 112-116. However, NPC does not include them in the amount-in-controversy calculation, and also does not include them in the common fund for attorneys' fees. *See* Docket No. 1. Thus, the Court does not address them.

7